NO. 24-1661

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

JFXD TRX ACQ LLC, dba TRX,

*Plaintiff-Appellant*,

v.

<TRX.COM>, ET AL.

*Defendant-Appellee*.

---

On Appeal from The United States District Court,
for the District of Arizona, No. 2:23-cv-02330

Hon. Senior Judge Roslyn O. Silver

---

**APPELLANT'S OPENING BRIEF**

---

Alain Villeneuve, SVP & GC
JFXD TRX ACQ LLC dba TRX
1420 5th Avenue, Suite 2200
Seattle, WA 98101
Telephone: (312) 404-1569
avilleneuve@trxtraining.com
Attorneys for Appellant
JFXD TRX ACQ LLC dba TRX

<u>CORPORATE DISCLOSURE STATEMENT</u>

Under Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record for JFXD TRX ACQ LLC, dba TRX certify that JFXD TRX ACQ LLC's parent corporation is JFXD Capital LLC, a Florida corporation. JFXD Capital LLCis not a publicly traded corporation.

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................1

II.   JURISDICTIONAL STATEMENT ...........................................2

III.  ISSUES PRESENTED.........................................................3

IV.   STATEMENT OF THE CASE ..............................................4

V.    SUMMARY OF THE FIVE ARGUMENTS ................................6

VI.   STANDARD OF REVIEW .................................................8

VII.  ARGUMENT .................................................................10

      A.    ISSUE I: The Wrong Circuit Law Was Applied ................................10

      B.    ISSUE II: The District Failed To Take Allegations As Truthful........12

      C.    ISSUE III: Rule 9 Heightened Standards Do Not Apply To ACPA..................................................14

      D.    ISSUE IV: The *GoPets* Doctrine Is At Best an Affirmative Defense ...........................................17

      E.    ISSUE V: Congressional Guidance Evidence GoPets Must Be Reversed Or At A Minimum Narrowed ...........................18

VIII. CONCLUSION ..............................................................26

STATEMENT OF RELATED CASES ..........................................27

CERTIFICATE OF COMPLIANCE ............................................28

CERTIFICATE OF SERVICE...................................................29

ADDENDUM..........................................................................30

135609.0004/9804951.2

# TABLE OF AUTHORITIES

Page

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................13, 14

*Boone* v. *Chiles*,
    10 Pet. 177, 203 F. 263, *affirmed*..................................................17

*Cafasso v. General Dynamics C4 Systems*,
    637 F.3d 1047 (9th Cir. 2011)........................................................14

*Desaigoudar v. Meyercord*,
    223 F.3d 1020 (9th Cir. 2000)..........................................................9

*Erikson v. Pardus*,
    551 U.S. 89 (2007) ........................................................................12

*Ferens v. John Deere Co.*,
    494 U.S. 516 (1990) ......................................................................11

*Freeman v. DirecTV, Inc.*,
    457 F.3d 1001 (9th Cir. 2006)..........................................................9

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 1997)............................................................9

*GoPets Ltd. v. Hise*,
    657 F.3d 1024 (9th Cir. 2011)...............................................*passim*

*Harman v. Apfel*,
    211 F.3d 1172 (9th Cir. 2000)..........................................................8

*Hooper v. Lockheed Martin Corp.*,
    688 F.3d 1037 (2012) ....................................................................11

*Ileto v. Glock Inc.*,
    349 F.3d 1191 (9th Cir. 2003)..........................................................9

ii

*Interstellar Starship Servs., Ltd. v. Epix, Inc.*,
     304 F.3d 936 (9th Cir. 2002)................................................................1

*Kirtley v. Rainey*,
     326 F.3d 1088 (9th Cir. 2003)..........................................................9

*Menowitz*,
     991 F.2d at 40..................................................................................11

*Ming v. Fitness Anywhere LLC*,
     (2:22-cv-02042)................................................................................11

*Piper Aircraft Co. v. Reyno*,
     454 U.S. 235 (1981) ...............................................................10, 11

*Prudential Ins. Co. of Am. v. PRU.COM*,
     546 F. Supp. 3d 476 (E.D. Va. 2021) ............................................24

*Prudential Ins. Co. of Am. v. Shenzhen Stone Network Info.*,
     58 F.4th 785 (4th Cir. 2023)................................................*passim*

*Schmidheiny v. Weber*,
      319 F.3d 581 (3d Cir. 2003) ............................................................22

*Skinner v. Switzer*,
     562 U.S. 521 (2011) ........................................................................12

*T.W. Elec. Serv., Inc. v. P. Elec. Contractors Ass'n*,
     809 F.2d 626 (9th Cir. 1987)............................................................8

*Van Dusen v. Barrack*,
     376 U.S. 612 (1964) ...............................................................11, 12

*Western Mining Council v. Watt*,
     643 F.2d 618 (9th Cir. 1981)............................................................9

*Wright-Blodgett Co. v. United States*,
     236 U.S. 397 (1915)..........................................................................17

*Zimmerman v. City of Oakland*,
     255 F.3d 734 (9th Cir. 2001)............................................................9

iii

## Statutes

15 U.S.C. § 1121 .................................................................................3

15 U.S.C. § 1125(d).......................................................................*passim*

15 U.S.C. § 1125(d)(2)(A) .................................................................3

28 U.S.C. § 1291 ...............................................................................3

28 U.S.C. § 1331 ...............................................................................3

28 U.S.C. § 1338 ...............................................................................3

28 U.S.C. § 1404(a) .........................................................................11

## Other Authorities

The Anticybersquatting Consumer Protection Act, Senate Report 106-140, 1st Session .....................................................................19, 20, 22

Federal Rule of Civil Procedure 12(b)(6).......................................9, 13

Federal Rules of Appellate Procedure 4(a)(1)(A) ...............................3

Federal Rules of Civil Procedure Rule 8(a)(2).........................12, 13, 14

House Report of the Judiciary Committee, 106th Congress, Report 106-412, Section-by-Section Analysis, Section 2................................1

Rule 8 ................................................................................................9

Rule 8(a) ..........................................................................................14

Rule 9 .........................................................................................2, 3, 9, 14

iv

# I. <u>INTRODUCTION</u>

The Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (the "ACPA"), was enacted to halt bad faith trade of Uniform Resource Locators aka URLs, often described as the "website URL" incorporating brands. The ACPA was an early form of fight against weaponized digital investments. House Report of the Judiciary Committee, 106th Congress, Report 106-412, Section-by-Section Analysis, Section 2 ("The bill is carefully and narrowly tailored, however, to extend only to cases where the plaintiff can demonstrate that the defendant registered, trafficked in, or used the offending domain name with bad-faith intent to profit from the goodwill of a mark belonging to someone else."). The ACPA came into effect specifically to stop a bad faith actor from registering, transferring, or using a domain name confusingly similar to a company's trademarked name. This Court and Congress has referred to these activities as "cybersquatting."

> Cybersquatting is the Internet version of a land grab. Cybersquatters register well-known brand names as Internet domain names in order to force the rightful owners of the marks to pay for the right to engage in electronic commerce under their own name.

*Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 946 (9th Cir. 2002).

Plaintiff owns the popular, U.S. veteran-created, internationally recognized fitness brand TRX®. Plaintiff has operated under this brand since 2005. In 2022, 17 years later, the URL <trx.com> was acquired from the public domain and is held today by what ACPA terms, a "cybersquatter." Plaintiff filed this case in Virginia,

135609.0004/9804951.2

mere weeks after the 4th Circuit issued its decision on eerily identical facts and grounds finding ultimately a violation of ACPA in *Prudential Ins. Co. of Am. v. Shenzhen Stone Network Info*., 58 F.4th 785 (4th Cir. 2023) ("*Prudential*"). *Prudential* revolved around, a petitioner, Prudential Insurance Company of America ("Prudential") bringing a suit under ACPA to enforce its rights against a cybersquatter. *Prudential* owned PRUDENTIAL® and secured the return of the three-letter URL <pru.com>. In this case, Plaintiff enforces similar rights against a cybersquatter as it owns TRX® and moves for the return of <trx.com>.

Strangely, without as much as a hearing, a motion from Defendant or any real evidence, the District misapplied this Circuit's case law interpreting the ACPA instead of the law where the case was filed and transferred on opposition from Plaintiff. Next, the District ignored dismissal rules of pleadings, refused to construe the allegations of the pleading as true amended to overcome *GoPets Ltd. v. Hise*, 657 F.3d 1024 (9th Cir. 2011) ("GoPets"). The District mistakenly applied Rule 9 heightened standard of "plausible allegations", also placed the burden on Plaintiff instead of placing the *GoPets* doctrine as an affirmative defense, and applied *GoPets* in a broader way that effectively guts the ACPA, deepens the split between Circuits. Reversal is required at least on five individual grounds.

## II.  JURISDICTIONAL STATEMENT

This case relates to a violation of the Anti-cybersquatting Consumer

Protection Act, 15 U.S.C. § 1125(d) (the "ACPA"). It was filed in the Eastern District of Virginia, and not the 9th Circuit and was transferred at the request of Defendant under objection from Plaintiff. (2:23-cv-00217, Dkt. #59). Jurisdiction is found pursuant to 15 U.S.C. §§ 1121, 1125(d)(2)(A) and 28 U.S.C. §§ 1331, 1338.

This Court has jurisdiction on final decisions of district courts under 28 U.S.C. § 1291 now dismissing with prejudice a simple amended pleading. The unanswered complaint was dismissed on February 22, 2024 (2:23-cv-02330, Dkt. #88). A notice of appeal was filed on March 14, 2024 (2:23-cv-02330, Dkt. #93), this notice, filed within 30 days of the ruling is timely under Federal Rules of Appellate Procedure 4(a)(1)(A). The appeal is of a final order dismissing all claims of the unanswered amended pleading.

### III.  ISSUES PRESENTED

**Issue I:** The U.S. Supreme Court and this Circuit warrants that a case transferred must respect and import Plaintiff's choice of law, specifically when a split exists. Consequently, the 4th Circuit precedent of *Prudential* should be applied, in opposition with the 9th Circuit split of *GoPets* as to the ACPA.

**Issue II:** The District failed to assume factual allegations contained in the amended complaint as true as it dismissed the pleading on its own motion. Amendments sufficed to give a presumption the *GoPets* precedent does not apply.

**Issue III:** The District used dismissed asking for the pleading to include Rule

3

9 heightened standard of "plausible allegations" reserved to fraud or mistake instead of a normal standard. The pleading is sufficient and the wrong standard was used.

**Issue IV:** The District placed the burden of pleading on the wrong party, and failed to recognize the GoPets pre-ownership as an affirmative defenses as required by Supreme Court precedents.

**Issue V:** *GoPets* as broadly construed by the District eviscerates the ACPA and is in conflict with three (all) other Circuits who have addressed this issue. Congressional guidance clearly provides that the *GoPets* property interest analysis must be reversed. This Court must revisit the precedent to align the law with the 11th, 2nd, and 4th Circuits, or provide additional guidance coherent with the facts of URLs falling back to the public domain.

## IV. <u>STATEMENT OF THE CASE</u>

Plaintiff filed this case in Virginia on February 16, 2023. (Complaint, 1:23-cv-00217, Dkt. #1). On January 24, 2023, less than a month before the filing, the 4th Circuit decided *The Prudential Ins. Co. of Am. v. Shenzhen Stone Network Info.*, 58 F.4th 785, 797 (4th Cir. 2023), a perfect roadmap for Plaintiff's case. The Complaint is a single count under the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (the "ACPA") begging for the return of the URL <trx.com> believed to have been acquired in bad faith for profit. (Amended Complaint, 1:23-cv-00217, Dkt. #86, ¶ 44-53). Plaintiff pleads ownership of the brand TRX® since at least

4

2005. (Amended Complaint, 1:23-cv-00217, Dkt. #86, ¶ 11). As pleaded, around 2022, the cyber-pirated URL was acquired from the public domain. (Amended Complaint, 1:23-cv-00217, Dkt. #86, ¶ 23). "Due to the incomplete nature of the postal address listed for the <trx.com> Domain Name, TRX also has not been able to reach the <trx.com> Domain Name registrant through postal mail. Further, TRX may be unable to obtain *in personam* jurisdiction over Defendant. Accordingly, in rem jurisdiction over <trx.com> is appropriate." (Amended Complaint, 1:23-cv-00217, Dkt. #86, ¶ 8).

> The amended pleading at the request of the Court reads in part:
>
> 23.  In or around October 2022, TRX's predecessor-in-interest, Fitness Anywhere LLC ("TRX's Predecessor"), learned that the Domain Name had been purchased. <u>Upon information and belief, TRX has owned the TRX® brand at least since 2005. Upon information and belief, in the period of 2018 to 2022, the URL would have expired and returned to the public domain, and in 2022, it was  purchased by Defendant from the public domain subsequent to the senior rights of TRX in violation of the ACPA.</u>

*Id*. Appellant alleges post-brand acquisition by the Defendant from the public domain. The Defendant neither answered the Complaint nor moved to dismiss it. and has failed to provide any evidence to rebut the allegations of the Complaint. The District court dismissed Plaintiff's action *sua sponte*, and wrote:

> The amended complaint alleges the registration of <trx.com> lapsed and it was "purchased by Defendant from the public domain" in 2022. Plaintiff appears to be alleging the domain name <trx.com> was available for anyone to register when Defendant registered the domain name with a registrar. But Plaintiff has already argued that registering

5

a publicly available domain name with a registrar costs $19.99 per year. (Doc. 83 at 5). Plaintiff has also argued Defendant purchased <trx.com> for $138,000. (Doc. 68 at 5; Doc. 83 at 7). Thus, the amount paid by Defendant for <trx.com> establishes Defendant did not register <trx.com> in 2022 with a registrar. Instead, as Defendant has repeatedly claimed, the purchase price shows Defendant bought the domain name on the secondary market.

Given Plaintiff's allegations and arguments, the amended complaint does not contain allegations making it plausible the registration of <trx.com> lapsed and the domain name became available to any member of the public. Without plausible allegations establishing the registration of <trx.com> lapsed, Ninth Circuit authority precludes Plaintiff's cybersquatting claim. GoPets Ltd. v. Hise, 657 F.3d 1024 (9th Cir. 2011) (holding subsequent owners of domain name have all rights enjoyed by original registrants).

(Dismissal Order, 2:23-cv-02330-ROS, Dkt. 88, Feb. 26, 2024). The District applied *GoPets* and not the 4th Circuit precedent of *Prudential* (**Issue I**). Acknowledges the pleading lists a drop in ownership, it refused to take the pleading as true (**Issue II**) and applied a heightened standard of "plausibility." (**Issue III**). The burden is wrongly placed on Plaintiff and should be on Defendant as an affirmative defense. (**Issue IV**). The application of ***GoPets*** ignores the purpose of the ACPA and must be reviewed by this Circuit. (**Issue V**).

## V. <u>SUMMARY OF THE FIVE ARGUMENTS</u>

Cyberpiracy law, a subset of trademark law is complex. Let's imagine Meta®, owner of <facebook.com> mistakenly drops its critical URL for a simple failure to renew. A fee of $20 is omitted. A registrar like GoDaddy® immediately swoops and auctions the URL at high price having paid no value for it. In this scenario, the

6

District relying on the 9th Circuit *GoPets* precedent would dismiss as a cyber-squatter generates bad faith profits. Cyberpiracy law does protect a good faith buyer who would buy the URL to build a website featured his goldfish named "Facebook."

Congress, via the ACPA, decided URLs were not Bitcoins® to invest, own, and collect for value to the detriment of a brand. The 9th Circuit precedential case of *GoPets* only stands for the notion that a good faith owner should be entitled to sell its URL acquired in good faith, pre-brand arrival and give good title to a subsequent buyer. The 11th, 4th, and 3rd Circuits concluded even a good faith owners cannot sell to bad faith actor and only narrowed who is a bad faith party upon registration. *The Prudential Ins. Co. of Am. v. Shenzhen Stone Network Info*., 58 F.4th 785, 797 (4th Cir. 2023) ("When a person re-registers a domain name because of a periodic re-registration requirement, they do not act with a bad faith intent to profit.").

This case does not need to reach the Supreme Court. The District erroneously used *GoPets,* when in fact this case filed under *Prudential* in Virginia should allow Plaintiff to avoid the issue under Supreme Court guidance (**Issue I**). Assuming arguendo *GoPets* somehow applies and Plaintiff's choice of law is ignored, the District refused presume the truth of the amended pleading (**Issue II**), placed a heightened "plausible" standard (**Issue III**), or even failed to require the GoPets doctrine to be plead as an affirmative defenses. (**Issue IV**).

A review of Congressional intent as it passed the ACPA (likely missed in

135609.0004/9804951.2

*GoPets*) did tangentially define "registration" as part of the process to be the moment when an owner can hide its identity. Congress also highlighted that property interest of a brand owner prime over the property interests of the URL owner. All other Circuits who have revied *GoPets* rejected a logic of treating a URL as property over a brand violation. (**Issue V**). In this simple case, in 2022, more than 17 years after the brand's arrival, a Defendant is alleged to have acquired the URL from the public domain in bad faith. The District here seems to eviscerate the ACPA, places burdens on Plaintiffs at filing on a case that was filed on the East Coast.

## VI. <u>STANDARD OF REVIEW</u>

"[D]ecisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo*), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *See Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000), *quoting Pierce v. Underwood,* 487 U.S. 552, 558 (1988).

Issues I (Choice of law), IV (Affirmative defense nature), and V (revisit of *GoPets*) are question of law. De novo review means that the 9th Circuit views the case from the same position as the district court. *T.W. Elec. Serv., Inc. v. P. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (this court sits in the same position as the district court and applies the same summary judgment test that governs the district court's decision). The appellate court must consider the matter anew, as if

no decision previously had been rendered. *See Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006).

Issues II and III relates to a dismissal of a pleading as failing to assume the allegations as truthful or placing a Rule 9 heightened standard of "plausibility," the 9th Circuit must review de novo a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). Rule 12(b)(6), which tests the legal sufficiency of the claims asserted in the complaint, must be read in conjunction with Rule 8, which requires a "short and plain statement showing that the pleader is entitled to relief" and "contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997) (internal citation omitted). A court must take "all well-pleaded allegations of material fact as true and construe them in the light most favorable to the plaintiff." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1021 (9th Cir. 2000); *see also Ileto v. Glock Inc*., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). The Court must consider all inferences favoring the non-moving party that a trier of fact could reasonably draw from the evidence. *See Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001). The Court need not accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Issue IV (the Secondary Market

135609.0004/9804951.2

conclusion), is also a dismissal of a pleading under the de novo standard.

## VII. ARGUMENT

### A.    ISSUE I: The Wrong Circuit Law Was Applied

Dismissing *sua sponte* an unanswered pleading with prejudice, the District concluded "[w]ithout plausible allegations establishing the registration of <trx.com> lapsed, Ninth Circuit authority precludes Plaintiff's cybersquatting claim. *GoPets Ltd. v. Hise*, 657 F.3d 1024 (9th Cir. 2011)." (2:23-cv-02330-ROS, Dkt. 88, Order Feb. 26, 2024).

Plaintiff filed this case in Virginia, a District within the 4th Circuit. (1:23-cv-00217, Dkt. #1). It did so as <trx.com> is a unique three-letter URL and a month before, the 4th Circuit issued guidance finding an ACPA violation of another three-letter URL <pru.com> with shockingly similar facts. *The Prudential Ins. Co. of Am. v. Shenzhen Stone Network Info.*, 58 F.4th 785 (4th Cir. 2023). *Prudential*, as shown at Section V below, aligns with all other Circuits who have distinguished *GoPets*: "Accordingly, we join the Third and Eleventh Circuits in holding that the term "registers" and its derivatives extends to each registration of a domain name, including the initial registration and any subsequent re-registrations." *Prudential*, 58 F.48 *at* 796. Plaintiff's Virginia case was transferred over objection to Arizona. (1:23-cv-00217, Dkt. # 41, 51, 53, 59).

There is a strong presumption in favor of Plaintiffs' choice of forum. *Piper*

*Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). "[W]here a case is transferred pursuant to 28 U.S.C. § 1404(a), [a court] <u>must</u> apply the choice-of-law rules of the State from which the case was transferred." *Piper Aircraft Co*., 454 U.S. at 243 n.8, *citing Van Dusen v. Barrack*, 376 U.S. 612 (1964)) (emphasis added). The 4th Circuit and the 9th Circuit are split and here, choice of law matters.

This Court discussing statutes of limitations and applying transferor law to the transferee District, noted the "real injustice." *Hooper v. Lockheed Martin Corp*., 688 F.3d 1037, 1046 (2012) ("Federal law is not "supposed to be unitary," *Menowitz,* 991 F.2d at 40, when it is borrowing limitations periods from the states, and so applying the law of the transferee forum works a real injustice, because a motion to transfer a properly filed suit can become "tantamount to a motion to dismiss." *Van Dusen,* 376 U.S. at 630, 84 S. Ct. 805."). Here, transfer meant a motion to dismiss.

The policies underlying *Van Dusen* require a transferee forum to apply the law of the transferor court, regardless of who initiated the transfer. *Ferens v. John Deere Co*., 494 U.S. 516, 521-532 (1990). Appellant filed this case listing both a possible unverified owner (Mr. Ming) and the URL itself (<trx.com>), a similar filing as the parties in *Prudential*.

The sole reason for disturbing Plaintiff's choice in Virginia was the existence of *Ming v. Fitness Anywhere LLC*. (2:22-cv-02042). Judge Steven P. Logan denied consolidation and concluded both actions "involve different questions of law and

11

fact." (2:23-cv-02330, Dkt. #77 / 2:22-cv-02042, Dkt. # 27) (Consolidation denied). Here transfer resulted in dismissal in violation of *Van Dusen*. Controlling law should be *Prudential* and not *GoPets*. Reversal is required on this ground alone.

## B.    ISSUE II: The District Failed To Take Allegations As Truthful

*GoPets* reads in part: "It is obvious that, under any reasonable definition, the initial contract with the registrar constitutes a "registration" under ACPA." *Gopets Ltd. v. Hise*, 657 F.3d 1024 (9th Cir. 2011). To the District, a lapse to the public domain / registrar allowed the claim to continue: "Without plausible allegations establishing the registration of <trx.com> lapsed, Ninth Circuit authority precludes Plaintiff's cybersquatting claim. *GoPets Ltd. v. Hise*, 657 F.3d 1024 (9th Cir. 2011)." (Dismissal Order, 2:23-cv-02330-ROS, Dkt. 88, Feb. 26, 2024). The amended pleading provides that the URL was purchased from the public domain:

> "Upon information and belief, TRX has owned the TRX® brand at least since 2005. Upon information and belief, in the period of 2018 to 2022, the URL <trx.com> would have expired and returned to the public domain, and in 2022, it was purchased by Defendant from the public domain subsequent to the senior rights of TRX in violation of the ACPA." (2:23-cv-02330, Dkt. # 86, ¶ 23) (underline present).

"Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible "short and plain" statement of the plaintiff's claim, not an exposition of his legal arguments." *Skinner v. Switzer*, 562 U.S. 521, 529 (2011). "[When] ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Erikson v. Pardus,* 551 U.S. 89, 93 (2007)

12

(emphasis added) (internal citations omitted). "Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 545, *quoting Conley v. Gibson*, 355 U.S. 41, 47, (1957).

The District forced Plaintiff to actively distinguish *GoPets*. (Order of initial dismissal, 2:23-cv-02330, Dkt. #82). Plaintiff, in the brief, explained that buying a URL from a database like GoDaddy® or 4.cn® suffices. *Id.* A story online emerged that around 2022, the URL likely dropped and is owned by an unknown pirate who acquired it around 2022. (Statement in Support of ACPA Claim, 2:23-cv-02330, Dkt. #83). But the District Court rejecting the truth of allegations pleaded had a different standard in mind:

> Given Plaintiff's allegations and arguments, the amended complaint does not contain allegations making it <u>plausible</u> the registration of <trx.com> lapsed and the domain name became available to any member of the public. Without <u>plausible</u> allegations establishing the registration of <trx.com> lapsed, Ninth Circuit authority precludes Plaintiff's cybersquatting claim. *GoPets Ltd. v. Hise*, 657 F.3d 1024 (9th Cir. 2011) (holding subsequent owners of domain name have all rights enjoyed by original registrants).

(Dismissal Order, 2:23-cv-02330-ROS, Dkt. 88, Feb. 26, 2024). The District asked the pleading to contain plausible allegations and did not take as truthful the allegations which are admitted. Under Rule 12(b)(6), allegations must be taken as

13

truthful.

## C.    ISSUE III: Rule 9 Heightened Standards Do Not Apply To ACPA

"Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, *Twombly*, 550 U.S., at 555, 127 S.Ct. 1955," *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). "Rule 9(b)requires particularity when pleading "fraud or mistake"" *Id*. at 687. "Because Rule 8(a) requires the pleading of a plausible claim, *Iqbal*, 129 S.Ct. at 1949-50, we hold that claims of fraud or mistake — including FCA claims — must, in addition to pleading with particularity, also plead plausible allegations." *Cafasso v. General Dynamics C4 Systems*, 637 F.3d 1047, 1055 (9th Cir. 2011), *quoting Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ACPA claims of cyber-piracy, as here, do not require a heightened standard and plead plausible allegations.

Appellant wrote in the pleading "Upon information and belief, in the period of 2018 to 2022, the URL <trx.com> would have expired and returned to the public domain, and in 2022, it was purchased by Defendant from the public domain subsequent to the senior rights of TRX in violation of the ACPA." (2:23-cv-02330, Dkt. # 86, ¶ 23). Plaintiff scoured the internet, pre-discovery and reconstruct online what seemed to be 20 years of URL ownership transfer without the benefit of discovery. It told the District credible research the URL dropped to the public

14

domain. (Statement in Support of ACPA Claim, 2:23-cv-02330-ROS, Dkt. 83). The District asking the heightened standard concluded the allegation "the URL <trx.com> would have expired and returned to the public domain, and in 2022, it was purchased by the Defendant from the public domain." To support a lack of "plausibility" the District writes:

> The amended complaint alleges the registration of <trx.com> lapsed and it was "purchased by Defendant from the public domain" in 2022. Plaintiff appears to be alleging the domain name <trx.com> was available for anyone to register when Defendant registered the domain name with a registrar. But Plaintiff has already argued that registering a publicly available domain name with a registrar costs $19.99 per year. (Doc. 83 at 5). Plaintiff has also argued Defendant purchased <trx.com> for $138,000. (Doc. 68 at 5; Doc. 83 at 7). Thus, the amount paid by Defendant for <trx.com> establishes Defendant did not register <trx.com> in 2022 with a registrar. Instead, as Defendant has repeatedly claimed, the purchase price shows Defendant bought the domain name on the secondary market.

(2:23-cv-02330-ROS, Dkt. 88, Order Feb. 26, 2024). This is a mini trial without due process. The $19.99 value and the "secondary market" are not in the pleading. Making up a "secondary market" to conclude no registrar was involved is pure speculation and also ignores the fact of who sold to the District "secondary market" and for how much. Plaintiff's suggestion makes more sense:

> GoDaddy.com® and 4.cn® both offer the URL <trx.com.co> for $19.99/year. This URL is available for "registration" by Plaintiff at a click (and not re-registration under the ACPA). Plaintiff is in the world of fitness and can get <trx.studio> for $139.99, and <trx.coach> for only $19.99. As the URL values crash, business owning these URLs simply let them lapse and return to the public domain. As shown below, this case is a great example of this trend. Defendant admits buying the

15

> URL from a registrar in 2022, the same way Plaintiff can now buy <trx.com.co> from GoDaddy®.

(2:23-cv-02330-ROS, Dkt. 83, page 5/9, Section III). Plaintiff/Appellant argued <trx.com.co> cost $19.99 and not <trx.com>. Appellant believes the District confuses <trx.com.co> and <trx.com>. Plaintiff/Appellant further explained <trx.studio> can cost at the registrar $139.99 so the registrar can sell the valuable <trx.com> more. A quick visit on today's registrars shows URLs now are sold for value. Plaintiff never "argued Defendant purchased <trx.com> for $138,000. (Doc. 68 at 5; Doc. 83 at 7)." Plaintiff was extremely careful in the pleading and the filings to highlight the fact prices, sources, identity, remains unverified. "URL's are generally sold at $1.99/year and this person acquired one for $138,000 <u>if the pleading is to be believed</u>." (Motion for Preliminary Injunction, 2:23-cv-02330-ROS, Dkt. 68)(emphasis added to another pleading).

The District wrote: "But Plaintiff has already argued that registering a publicly available domain name with a registrar costs $19.99 per year. (Doc. 83 at 5)." Of course Plaintiff/Appellant never did. The portion above claims $19.99 is the cost of <trx.com.co> and not <trx.com>. Cyber-piracy under the ACPA does not force a Plaintiff, facing an unknown "cyber-violator" to bear the burden of tracing ownership, or pleading with heightened specificity how the URL was acquired. There is an inherent unfairness here of Plaintiff/Appellant reading these strange arguments at dismissal with prejudice and _____.

16

**D.      ISSUE IV: The *GoPets* Doctrine Is At Best an Affirmative Defense**

*GoPets* is based on the general notion that "[w]e see no basis in ACPA to conclude that a right that belongs to an initial registrant of a currently registered domain name is lost when that name is transferred to another owner. The general rule is that a property owner may <u>sell</u> all of the rights he holds in property." *Gopets Ltd. v. Hise*, 657 F.3d 1024, 1031 (9th Cir. 2011) (emphasis added). In this precedent, the Court treated the URL as "intellectual property." The *GoPets* doctrine of undisturbed ownership by the ACPA is given to help a good faith seller and insulates a subsequent new owner (even a pirate) who would acquire the URL.

Putting aside Issues I, II, III, and V below, the U.S. Supreme Court has a perfect answer to the current predicament. A bona fide purchase for value of a patent must claim a defense of bona fide purchase as an affirmative defense. *Wright-Blodgett Co. v. United States*, 236 U.S. 397 (1915) ("Despite satisfactory proof of fraud in obtaining the patent, if the legal title has passed, *bona fide* purchase for value is a perfect defense; but it is an affirmative one which the grantee must establish in order to defeat the Government's right to cancel a patent which fraud alone is shown to have induced. *Boone* v. *Chiles*, 10 Pet. 177, 203 F. 263, *affirmed*."). The same principle applies here.

The District placed the burden on Plaintiff to explain what happened to the URL from 2005 up to 2024 as it wrote: "Without plausible allegations establishing

the registration of <trx.com> lapsed, Ninth Circuit authority precludes Plaintiff's cybersquatting claim. *GoPets Ltd. v. Hise*, 657 F.3d 1024 (9th Cir. 2011) (holding subsequent owners of domain name have all rights enjoyed by original registrants)." (2:23-cv-02330-ROS, Dkt. 88, Order Feb. 26, 2024). Without discovery, having to come up with specifics, allegations, Plaintiff must prove or disprove ownership chains that predates its brand. A pirate who acquired in bad faith a URL post-brand, as is likely the case here, to benefit from *GoPets*.

In *GoPets*, the property moved between the two legal entities owned by the same person. In this case, Defendant if believed to be a bad faith cyber actor and is the one who must prove a chain of title of "re-registration" that predates the 2005 brand. Here, in the Answer, if Defendant believes it has acquired "re-registration" which predates the brand, giving it any ownership shield under GoPets, it has the burden of proof as an affirmative defense. This guidance alone requires reversal.

**E.    ISSUE V: Congressional Guidance Evidence GoPets Must Be Reversed Or At A Minimum Narrowed**

The District "hold[s] subsequent owners of domain name have all rights enjoyed by original registrants." Dismissal Order, 2:23-cv-02330-ROS, Dkt. 88, Feb. 26, 2024, *quoting GoPets Ltd. v. Hise*, 657 F.3d 1024 (9th Cir. 2011). This statement eviscerates the ACPA. Reading the *GoPets* decision, where the Circuit found Mr. Hise's personal transfer free of the ACPA suggests only very partial congressional guidance was ever given to this Circuit as it reviewed the question.

Congress talking of the early "tree-letter" URLs explained:

> Network Solutions – the domain name registry that administers the Internet's ".com" ".net," ".org," and ".edu" top level domains – pulled on a London computer club in May, 1999, that had registered over 75,000 domain names using an automated computer program. Their aim was to lock up all available four letter domains by systematically reserving every possible combination of letters starting with aaaa.com, then aaab.com, aaac.com, up to zzzz.com until every available combination had been reserved.

Section III, Discussion. Report to the Committee on the Judiciary, The Anticybersquatting Consumer Protection Act, Senate Report 106-140, 1st Session, August 5, 1999 (quoting "Run on Domain Names Foiled, Wired News," May 27, 1999). At the passage of the ACPA, all the one, two, three and even four-letters, including <trx.com> were already moving. Under the District's read, the ACPA at would have insulated Network Solutions?

In *GoPets*, the plaintiff secured the URL <gopets.com> in March 1999. *Gopets, 657 F.3d* at 1026. He co-owned a corporation Digital Overture with his brother. *GoPets*, 657 F.3d at 1027. Four years <u>after</u> the acquisition of the URL <gopets.com>, a foreign company began using the brand GoPets® which post-dated ownership. *GoPets*, 657 F.3d at 1027. "Two days after sending the email and letter [demanding $5 million], Edward Hise transferred the registration of gopets.com from himself to the brothers' corporation, Digital Overture." *GoPets*, 657 F.3d at 1028. The transfer occurred in 2006, <u>post</u> brand existence and allegations of piracy surfaced. In theory the ACPA applied to the mere act of transfer by Mr. Hise from

19

his left to his right hand mid litigation.

Trying to reach the right outcome, the 9th Circuit distinguished "initial registrations" and a newly created and creatively advocated concept of "re-registrations." This Circuit explained that "[t]he words "registration" and "register" are not defined in ACPA. It is obvious that, under any reasonable definition, the initial contract with the registrar constitutes a "registration" under ACPA. It is less obvious which later actions, if any, are also "registrations." *GoPets*, 657 F.3d at 1030. Talking of updates on a registration, billing information change, switch to "private," substitution of a name, switch between registrars, change in payor, and renewal "[a]ll of these actions could conceivably be described as "registrations" within the meaning of § 1125(d)(1)." *GoPets*, 657 F.3d at 1031.

The ACPA prevents a specific type of purchase, a bad faith purchase the way Congress could exclude from a car transaction anyone who desires to buy a car for the purpose of selling the car abroad. What constitutes this "re-registration" is the problem. Another portion from Congress must be highlighted:

> A significant problem faced by trademark owners in the fight against cybersquatting is the fact that many cybersquatters register domain names under aliases or otherwise provide false information in their registration applications in order to avoid identification and service of process by the mark owner. (Emphasis added).

In rem jurisdiction comments. Report to the Committee on the Judiciary, The Anticybersquatting Consumer Protection Act, Senate Report 106-140, 1st Session,

135609.0004/9804951.2

August 5, 1999. Congress did define clearly what is a registration to the ACPA. This "registration" must include an application and it must allow for a bad faith party to use aliases, false information and avoid service by the mark owner. This read is incompatible with *GoPets*.

To best illustrate how such read of "re-registration" is illogical, if brand X is born, a bad faith actor simply needs to ask a good faith friend to acquire the URL and transfer it over. Under GoPets, a clueless actor who buys the URL insulate all subsequent actors. Congress is clear and coherent with everyone's desire and protects Mr. Hise who did not register his company using false identity.

For example, at the payment of a renewal fee, there is no possible entry of false identity, so arguably the re-registration on fee payment could function.

The 9th Circuit wrote: "Looking at ACPA in light of traditional property law, however, we conclude that Congress meant "registration" to refer only to the initial registration…. We see no basis in ACPA to conclude that a right that belongs to an initial registrant of a currently registered domain name is lost when that name is <u>transferred</u> to another owner. The general rule is that a property owner may sell all of the rights he holds in property." *GoPets*, 657 F.3d at 1031 (emphasis added). The 9th Circuit concluded the transfer was only "continued ownership" and could not violate the ACPA. *GoPets*, 657 F.3d at 1032.

The 9th Circuit placed property rights of a URL owner above the property

21

rights of a brand owner, this – once again -- clearly violates Congress' work:

> Paragraph (1)(B) of the new section 43(d) sets forth a number of nonexclusive, nonexhaustive factors to assist a court in determining whether the required bad-faith element exists in any given case. <u>These factors are designed to balance the property interests of trademark owners with the legitimate interests of Internet users and others who seek to make lawful uses of others' marks, including for purposes such as comparative advertising, comment, criticism, parody, news reporting, fair use, etc</u>. The bill suggests a total of eight factors a court may wish to consider. The first four suggest circumstances that may tend to indicate an absence of bad-faith intent to profit from the goodwill of a mark, and the last four suggest circumstances that may tend to indicate that such bad-faith intent exists.

Section V, Section-by-Section Analysis, Section 3. Cyberpiracy prevention. Report to the Committee on the Judiciary, The Anticybersquatting Consumer Protection Act, Senate Report 106-140, 1st Session, August 5, 1999. Congress placed the property interest of the brand owners above the rights of the holder. Networks Solutions sitting on 75,000 URLs was not insulated. If Networks Solutions still owns the four-letter URL <meta.com> it can sell it to any good faith party who intends to use the URL for hundreds of legitimate purposes. The ACPA prevents the sale of the URL to a bad faith actor.

The 4th Circuit first addressing the 3rd Circuit's conclusions offered, "In *Schmidheiny v. Weber*, the Third Circuit held that the term "registration" is not limited to the initial registration but encompasses subsequent re-registrations as well. 319 F.3d 581, 582 (3d Cir. 2003)." *Prudential*, 58 F.4th at 794. "Thus, the Third Circuit held that the term "registration," as used in the ACPA, includes the initial

22

registration and subsequent re-registrations because a "registration" is the creation of a "new contract at a different registrar and to a different registrant." *Prudential*, 58 F.4th at 795.

The 4th Circuit next turned to the 11th Circuit: "Because the ACPA did not qualify the term "registration" with a word like "initial" or "creation," the Eleventh Circuit applied the "plain and unambiguous" meaning of the word and reasoned, "a re-registration is, by definition, a registration." *Id*. at 777 (internal quotation marks omitted). The Eleventh Circuit also looked to Congress's intent in enacting the ACPA and determined, "It would be nonsensical to exempt the bad-faith re-registration of a domain name simply because the bad-faith behavior occurred during a subsequent registration." *Id*. at 778. Therefore, the court held that a re-registration constituted a registration pursuant to the ACPA. *Id*. at 774. *Prudential*, 58 F.4th *at* 795, *quoting Jysk Bed'N Linen v. Dutta-Roy,* 810 F.3d 767 (11th Cir. 2015).

Next looking at *GoPets*, the 4th Circuit wrote, "The Ninth Circuit concluded that the defendant was not a cybersquatter, given the minor, nominal change in ownership, because the defendant effectively controlled the subject website both before and after the change in the registration. *Id*. The court reasoned that the domain name holder has the right to transfer the domain to another owner because "[t]he general rule is that a property owner may sell all of the rights he holds in property." *Id*. at 1032. Thus, because including subsequent re-registrations within the meaning

of "registration" would make domain names "effectively inalienable," the Ninth Circuit held that the term registration, as used in the ACPA, "refer[s] only to the initial registration." *Id*. at 1031–32." *Prudential*, 58 F.4th at 796, quoting *GoPets Ltd. v. Hise*, 657 F.3d 1024 (9th Cir. 2011). "Additionally, we agree with the district court that "[t]he underlying rationale for the Ninth Circuit's decision—a public policy concern that innocent persons would be subject to ACPA liability for minor, periodic re-registrations of domain names—is best addressed through the bad faith intent to profit inquiry." *Prudential Ins. Co. of Am. v. PRU.COM*, 546 F. Supp. 3d 476, 492 (E.D. Va. 2021)" *Prudential*, 58 F.4th at 797. "Accordingly, we join the Third and Eleventh Circuits in holding that the term "registers" and its derivatives extend to each registration of a domain name, including the initial registration and any subsequent re-registrations. Where a successive registration of a disputed domain name postdates the trademark registration of the corresponding mark, the mark owner may show that the successive registration was done in bad faith. This interpretation furthers the ACPA's purpose of eliminating cybersquatting and protecting American businesses, consumers, and online commerce." *Prudential*, 58 F.4th at 797.

Factoring how Congress did define a "registration application," while Plaintiff / Appellant believes the law in the other Circuits should be extended to the 9th Circuit, at a minimum the precedent must be narrowed with the following test:

24

(a)    the GoPets doctrine is an affirmative defense and must be plead by a Defendant along with a chain of temporal "re-registration" that predate a brand existence and dates to a good faith owner;

(b)    exclude from "re-registration" post-brand acquisition from a public domain database or public offering; and

(c)    any billing information change, switch to "private," substitution of a name, switch between registrars, change in payor, and fee or renewal of URLs to qualify as "re-registration" are not such that a party could provide false or misleading identity information and avoid legal processes by hiding the identity.

The above test does not reverse the situation in GoPets as Mr. Hise likely changed part of the registrar linked with the owner but not the technical contact, the address information or other information. This Court should simply align the law with all other circuits by returning to the core notion that the ACPA of bad faith / good faith test to protect Mr. Hise.

Property owners (here URLs) constantly are given limitations on divestment by Congress by a third party interests. Liens on real-estate for example lower the value of a home, bind a seller and narrows the pool of buyers as Congress wants third-party service providers to secure payments from potential good faith buyers. The ACPA is the same. URLs that are substantially similar to brands can only sold

25

to "good faith" buyers.

## VIII. <u>CONCLUSION</u>

This case was filed by Plaintiff / Appellant in the 4th Circuit where Prudential offers the perfect roadmap to success under the ACPA. The case was transferred against Plaintiff/Appellant over objection and resulted in dismissal with prejudice in clear violation of U.S. Supreme Court precedent. Moving the venue of a case should not result in victory by any defendant. Assuming GoPets applied, it housed very unique facts to which the 9th Circuit found a way to the right result. Over time this precedent aged poorly. Today, it splits circuits and eviscerates the ACPA in the West Coast. Plaintiff/Appellant offers Congressional dicta asking the 9th Circuit to revisit GoPets if not overturn it. Plaintiff/Appellant's crown jewel after a long carreer as a litigator would be to push to the Supreme Court for further guidance. Plaintiff/Appellant kindly asks this Court, if such an appeal is needed that it indicates such.

Date: July 16, 2024

Alain Villeneuve
*/s/ Alain Villeneuve]*
Alain Villeneuve
Attorneys for Appellant

*JFXD TRX ACQ LLC, dba TRX*

26

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s): No. 24-1661**

The undersigned attorney or self-represented party states the following:

[  ]  I am unaware of any related cases currently pending in this court.

[  ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[x]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**No. 24-3391: Fee petition motion.**

**Signature** /Alain Villeneuve/_ **Date July 16, 2024**

27

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s): No. 24-1661**

I am the attorney or self-represented party.

**This brief contains _____ words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

  [ ] it is a joint brief submitted by separately represented parties;

  [ ] a party or parties are filing a single brief in response to multiple briefs; or

  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /Alain Villeneuve/          **Date July 16, 2024**

28

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

**Signature** /Alain Villeneuve/          **Date July 16, 2024**

# ADDENDUM

15 U.S. Code § 1125 - False designations of origin, false descriptions, and dilution forbidden

(d) Cyberpiracy prevention

(1)

(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—
(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
(ii) registers, traffics in, or uses a domain name that—
(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
(II )in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
(III) is a trademark, word, or name protected by reason of section 706 of title 18 or section 220506 of title 36.

(B) (i) In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to—
(I) the trademark or other intellectual property rights of the person, if any, in the domain name;
(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
(IV)the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

30

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

(ii) Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.

(C) In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.

(D) A person shall be liable for using a domain name under subparagraph (A) only if that person is the domain name registrant or that registrant's authorized licensee.

(E) As used in this paragraph, the term "traffics in" refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration.

(2)

(A) The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if—

(i) the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c); and

(ii) the court finds that the owner—

(I) is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or

(II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by—

31

(aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and

(bb) publishing notice of the action as the court may direct promptly after filing the action.

(B) The actions under subparagraph (A)(ii) shall constitute service of process.

(C) In an in rem action under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which—

(i) the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located; or

(ii) documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain name are deposited with the court.

(D) (i) The remedies in an in rem action under this paragraph shall be limited to a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark. Upon receipt of written notification of a filed, stamped copy of a complaint filed by the owner of a mark in a United States district court under this paragraph, the domain name registrar, domain name registry, or other domain name authority shall—

(I) expeditiously deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court; and

(II) not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court.

(ii) The domain name registrar or registry or other domain name authority shall not be liable for injunctive or monetary relief under this paragraph except in the case of bad faith or reckless disregard, which includes a willful failure to comply with any such court order.

(3) The civil action established under paragraph (1) and the in rem action established under paragraph (2), and any remedy available under either such action, shall be in addition to any other civil action or remedy otherwise applicable.

(4) The *in rem* jurisdiction established under paragraph (2) shall be in addition to any other jurisdiction that otherwise exists, whether in rem or in personam.

135609.0004/9804951.2